UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY GRANT,<br><br>Defendant. | Case No. 25-MJ-141 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The defendant, Anthony Grant, was arrested and found in possession of a loaded handgun and 15 rounds of ammunition, as well as multiple plastic baggies, $900 in cash, and 143.5 grams of crack cocaine, worth an estimated street value of $14,500. Despite multiple prior convictions and periods of supervised release for firearms and drug-related offenses, including Unlawful Possession of a Firearm (Prior Conviction) and Attempted Possession with Intent to Distribute Heroin, Grant continues to illegally possess firearm and distribution-levels of narcotics, endangering the community. In light of the presumption applicable to these offenses, and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, Grant should be detained pending trial.

I.    **Procedural History**

On August 8, 2025, a Complaint was filed in DC Superior Court, charging Grant with Unlawful Possession of a Firearm (Prior Conviction), Possession with Intent to Distribute a Controlled Substance, and Carrying a Pistol Without a License (Outside Home or Business). Grant was arraigned in Superior Court and was detained pending a preliminary hearing. Prior to the

Superior Court preliminary hearing, a Complaint was filed in District Court, charging Grant with Unlawful Possession of a Firearm and Ammunition By A Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year under 18 U.S.C. § 922(g)(1) and Unlawful Possession With Intent to Distribute 28 Grams or More of a Mixture of Substance Which Contains Cocaine Base). Grant was arraigned in District Court on August 18, 2025, and a detention hearing was set for August 19, 2025.

The government now respectfully submits this memorandum in support of its motion for pretrial detention.

## II.     Legal Authority and Argument

The United States seeks detention pursuant to §§ 3142(f)(1)(D) (serious drug felony with a max sentence greater than ten years) and 3142(f)(1)(E) (felony involving possession of a firearm), because the defendant is charged with possession of a firearm and narcotics following numerous previous firearm and narcotics convictions.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id.*

In determining whether any condition or combinations of conditions will assure the safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be

posed by his release. *See* 18 U.S.C. § 3142(g). Further, the Court shall consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(2)(B).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

    A.  **<u>The Nature and Circumstances of this Offense Merits Detention.</u>**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention. As set forth below, Grant was arrested and found in possession of a loaded handgun with 15 bullets in the magazine and 143.5 grams of crack cocaine with an estimated street value of $14,500, as well as plastic baggies and over $900 in cash.

On August 8, 2025, at approximately 0305 hours, members of the United States Park Police, Alcohol, Tobacco, and Firearms (ATF), and Enforcement and Removal Operations (ERO), in conjunction with the Executive Order 14252 Task Force, were patrolling the area of Georgia

Ave NW, Washington, D.C., to enforce local narcotics laws. This area is known to Task Force members as an open-air drug market, where numerous individuals are known to sell and use illegal narcotics.

During the patrol, Detective Sergeant Giblin ("D/Sgt. Giblin"), ATF Special Agent Khoury (SA Khoury), and Enforcement and Removal Operations Officer Kovacic observed a grey Nissan Altima traveling Northbound Georgia Ave and take a left onto Kenyon St NW, the vehicle then turned left onto Sherman Street NW without using a turn signal. The officers also observed that the vehicle's license plate was unreadable, appearing to have been sprayed with a reflective coating commonly used to obscure plates from traffic enforcement cameras in the District of Columbia. D/Sgt. Giblin conducted a traffic stop on the vehicle at 2900 Sherman Street NW and approached it, identifying the license plate as a Wisconsin tag bearing WH2271H.

Upon approaching the driver's side window, D/Sgt. Giblin immediately detected the odor of burnt marijuana emanating from inside the vehicle. He made contact with the driver and sole occupant, identified via a D.C. driver's license (9577387) as the Defendant, Anthony Leonard Grant. D/Sgt. Giblin asked Grant if there was anything in the vehicle that he should be aware of, such as weapons or drugs. Grant replied, "No." When asked about the odor of marijuana, Grant stated that he had just gotten off work and had smoked some marijuana.

D/Sgt. Giblin asked Grant to step out of the vehicle to continue the investigation. Upon doing so and moving Grant to the rear of the vehicle, D/Sgt. Giblin still smelled marijuana, this time emanating from Grant's person. D/Sgt. Giblin and SA Khoury then conducted a search of the vehicle. During the search, they located a black and silver Smith & Wesson 9mm handgun bearing serial number PDB3549, loaded with 15 rounds in the magazine, inside a duffle bag in the trunk.

Also found in the duffle bag were male clothing items appearing to match Grant's size, and a clear plastic bag containing multiple smaller baggies filled with white and brown rock-like substances.

SA Khoury inspected the firearm and observed that the firearm appeared to be fully functional, designed to expel a projectile by the action of explosive, has a barrel length of less than 12 inches, and can be fired by the use of a single hand.

A police records check of Grant revealed he did not have a license to carry a concealed weapon in the District of Columbia as required by law. Grant also did not have a firearm registered as required by law. Further investigation showed the firearm had been reported stolen out of Prince George's County on January 21, 2025.

A criminal history check revealed that Grant had been convicted:

- In Washington, DC Superior Court case number 2015-CF2-007105 of Attempted Possession with Intent to Distribute a Controlled Substance (Heroin) and sentenced to 24 months incarceration, 12 months suspended, and 3 years of supervised release;
- In Washington, DC Superior Court case number 2011-CF2-020216 of Unlawful Possession of a Firearm (Prior Conviction) and Committing an Offense During Release and sentenced to 40 months incarceration and 3 years of supervised release;
- In Prince George's County, Maryland Circuit Court case number CT111012A of Possession of a Controlled Dangerous Substance and Possession of a Regulated Firearm, and sentenced to 1 year confinement and 2 years unsupervised probation (Possession of a Controlled Dangerous Substance), and 18 months confinement (Possession of a Regulated Firearm);
- In Washington, DC Superior Court case number 2005-FEL-007434 of Attempted Possession with Intent To Distribute a Controlled Substance (Cocaine), Attempted Carrying a Pistol Without a License Outside the Home or Business, Possession of an Unregistered Firearm/Unlawful Possession of a Firearm or Destructive Device, and Unlawful Possession of Ammunition, and sentenced to 15 months incarceration and 5 years supervised release (Attempted Possession with Intent To Distribute a Controlled Substance (Cocaine)), 90 days incarceration (Attempted Carrying a Pistol Without a License Outside the Home or Business), 6 months (Possession of an Unregistered Firearm/Unlawful Possession of a Firearm or Destructive Device), and 6 months (Unlawful Possession of Ammunition);

- In Washington, DC Superior Court case number 2002-FEL-005105 of Attempted Distribution of Cocaine and sentenced to 360 days incarceration.

Accordingly, Grant would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was possessing the firearm and ammunition.

During a search incident to arrest, D/Sgt. Giblin detected an object that did not feel natural in Grant's groin area. When questioned, Grant refused to say what the object was. A subsequent search revealed a clear plastic baggie containing a white and brown rock-like substance. Inside this larger bag were multiple smaller baggies containing a similar substance. The substances were field tested and returned positive results for cocaine. The total quantity recovered was 143.5 grams, with an estimated street value of $14,500. Also recovered from Grant's right front pocket was $901 in US currency with various denominations.

Based on D/Sgt. Giblin's training and experience, the quantity, packaging, and variety of U.S. currency denominations found on Grant were consistent with possession with intent to distribute rather than simple possession.

Grant is charged with two serious offenses that carry significant penalties. For violating 18 U.S.C. § 922(g), he faces a maximum sentence of ten years. But he faces even more significant charges based on evidence recovered at the time of his arrest. Should Grant be convicted of the Possession with Intent to Distribute charge under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), he faces a mandatory minimum of years' imprisonment, and a maximum term of forty years.

Here, Grant possessed a loaded handgun and ammunition, unsecured in a bag in his vehicle. But he did not just possess the handgun and ammunition; Grant also was in possession of over $14,500 of crack cocaine and other evidence of drug distribution paraphernalia. This Court has

repeatedly recognized the dangerousness associated with carrying a firearm in connection with drug distribution. *See, e.g.*, *United States v. Carr*, No. CR 22-289 (RDM), 2022 WL 13947798, at *4 (D.D.C. Oct. 22, 2022) (finding the first factor weighed in favor of detention given "the combination of drug distribution *and* the illegal possession of guns presents a serious danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter.")

The nature and circumstances of these offenses weighs heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. As then-Chief Judge Howell noted at length in *Blackson*, the "weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." *United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *20 (D.D.C. Feb. 6, 2023) (Howell, C.J.). It is a "common sense consideration," because "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Id*.

The Government's case against Defendant Grant is robust. The firearm and ammunition were recovered in a duffle bag in the back of Grant's vehicle, of which he was the driver and sole occupant. In that bag, Officers also found male clothing items that matched Grant's size, as well

7

as a clear plastic bag containing multiple smaller baggies filled with white and brown rock-like substances. Upon search incident to arrest, officers discovered 143.5 grams of crack cocaine, with an estimated street value of $14,500, and over $900 in cash on Grant's person.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson* at *10. This is such a case, and Grant should be detained pretrial.

### C. The Defendant's History and Characteristics Merit Detention.

The third factor, Grant's history and characteristics, likewise weighs in favor of detention.

Grant is no stranger to either of his instant charges. Since 2002, he has been arrested 26 times and convicted 9 times. Four of those convictions are for firearms-related offenses: Carrying a Pistol Without a License in 2002; Attempted Carrying a Pistol Without a License, Possession of Unregistered Firearm/Unlawful Possession of a Firearm, and Unlawful Possession of Ammunition in 2006; Possession of a Regulated Firearm in 2013; and Unlawful Possession of a Firearm (Prior Conviction) in 2012. Five of those convictions are for drug-related offenses: Possession of Cocaine in 2001; Attempted Distribution of Cocaine in 2002; Attempted Possession with Intent to Distribute Cocaine in 2006; Possession of a Controlled Dangerous Substance in 2013; and Attempted Possession with Intent to Distribute Heroin in 2015.

Notably, Grant was arrested on June 10, 2011, and charged in Prince George's County, Maryland Circuit Court case CT111012A. He eventually pled guilty in that case in 2013 to

Possession of a Controlled Dangerous Substance and Possession of a Regulated Firearm, and was sentenced to 5 years incarceration, with 3 years, 6 months, and 10 days suspended.

While he was on pretrial release in that case, Grant was arrested on October 19, 2011, and charged in DC Superior Court case number 2011-CF2-020216. In that case, officers observed a large bulge in Grant's waistband as he exited a vehicle. As officers approached Grant and attempted to pat him down, Grant fled on food. Officers chased Grant down the street and into an alley, at which point Grant took his jacket off and threw a firearm at an officer. Officers eventually recovered a handgun and seven rounds of ammunition. Grant eventually pled guilty to Unlawful Possession of a Firearm (Prior Conviction) and Committing the Offense During Release on March 21, 2012, and he was sentenced to 40 months imprisonment and 3 years of supervised release. The Government's Proposed Proffer of Facts is attached as Exhibit A. Grant's supervised release was revoked to incarceration on June 23, 2016.

While he was on Supervised Release in that case, Grant was once again arrested and charged in 2015-CF2-007105. There, Grant was observed making a hand-to-hand drug transaction. He was arrested after a brief struggle, at which point officers recovered 27 baggies of cocaine, 3 baggies of crack cocaine, and 10 glassine baggies of heroin, along with $780 in cash, on Grant's person. The Arrest Affidavit is attached as Exhibit B. Grant eventually pled guilty to Attempted Possession with Intent to Distribute Cocaine and was sentenced to 24 months incarceration, 12 months suspended, and 3 years of supervised probation.

Although his last firearm or drug-related conviction was in 2015, Grant's history represents a clear and concerning pattern: illegally possessing firearm and controlled substances and disregarding court orders, necessitating further enhanced charges and revocation of his probation

9

and supervised releases. Grant should be detained pending trial, as there is no other way to ensure the safety of the community.

### D. Defendant Grant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by Grant's release, similarly weighs in favor of detention.

Grant was arrested in possession of 143.5 grams of crack cocaine—$14,500 worth of a drug responsible for the deaths of hundreds of DC residents every month. *See* Ahmad FB, Cisewski JA, Rossen LM, Sutton P, *Provisional drug overdose death counts*, National Center for Health Statistics, https://dx.doi.org/10.15620/cdc/20250305008, (last updated August 13, 2025). Further, judges of this Court have consistently recognized the inherent dangerousness of carrying a concealed, loaded firearm. *See Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

While the defendant's crime in this case did not result in any direct violence against another, unlawful possession, especially when in connection with large quantities of narcotics, can

lead to dangerous consequences, thereby underscoring the need to take such crimes seriously. This fourth factor, as with all the three prior factors, weighs heavily in favor of pretrial detention.

## CONCLUSION

The Government respectfully requests that the Court issue an Order granting its motion that Barnett be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


Dated: August 18, 2025          By:     */s/ Jonathan A. Sussler*
                                        Jonathan A. Sussler
                                        N.Y. Bar No. 5973912
                                        Special Assistant United States Attorney
                                        United States Attorney's Office
                                        for the District of Columbia
                                        Federal Major Crimes Section
                                        601 D Street NW
                                        Washington, D.C. 20530
                                        (202) 815-8576
                                        Jonathan.Sussler2@usdoj.gov