UNITED STATES DISTRICT COURT for the DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES : | |
| : | 25-cr-303 (RBW) |
| v. : | |
| : | |
| ANTHONY GRANT : | |

### DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO QUASH SUBPOENA *DUCES TECUM*

On November 6, 2025, undersigned counsel, acting on behalf of Mr. Grant, caused a subpoena *duces tecum* to be served upon the Metropolitan Police Department ("MPD") for records documenting arrests for drug possession and/or distribution between August 1, 2024 – August 31, 2025, in the blocks relevant to this matter.[1] The records were subpoenaed to the status hearing before this Court on December 3, 2025.

On December 3, 2025 -- nearly a month after the subpoena's issuance -- the government sought additional time to move to quash Mr. Grant's subpoena. The government's motion should be denied as untimely, for lack of standing, and also on the merits.

As grounds for this opposition to the government's motion, undersigned counsel states:
1) At 3:05AM on August 8, 2025, Mr. Grant – still in his work uniform -- was driving home from work, when two unmarked carloads of newly federalized law enforcement forces pulled him over. No fewer than 6 plainclothes officers wearing tactical vests became involved in the ensuing events, which culminated in the warrantless search of the closed and locked trunk of Mr. Grant's lawfully owned and duly registered vehicle.

---

[1] Specifically, the *Gerstein* reflects that officers first saw Mr. Grant turn left from Georgia Avenue onto Kenyon St. NW, and then turn left onto Sherman Street NW. According to the *Gerstein* officers then pulled Mr. Grant over in the *2900* block of Sherman Street NW. However, testimony at any hearing in this matter would establish that Mr. Grant turned left from Georgia Ave onto Fairmont St. NW, and was thereafter stopped in the *2600* block of Sherman Street NW-- as can be clearly seen in body worn camera footage. Thus, the subpoena sought records for the 2600 block of Georgia Ave (where police first observed Mr. Grant); the 2900 block of Sherman Ave (where they claim to have stopped Mr. Grant), and the 2600 block of Sherman (where they actually stopped Mr. Grant).

2)  The "traffic stop" was conducted allegedly because Mr. Grant failed to signal the second (though not the first) of his left turns while police followed behind him, and because the dealer's license plate affixed to the car being driven by Mr. Grant – who is a car dealer – "was unreadable, appearing to have been sprayed with a reflective coating," though the license plate is plainly legible from all angles on body worn camera footage.

3)  According to the *Gerstein,* upon approaching the driver's side window, U.S. Park Police Sgt. Giblin detected the odor of burnt marijuana coming from inside the car.  Giblin asked Mr. Grant about the smell, and, according to the *Gerstein,* Mr. Grant admitted to having smoked some marijuana after just having gotten off work.

4)  Sgt. Giblin ordered Mr. Grant out of the car and as Mr. Grant moved, Sgt. Giblin "still smelled marijuana, this time emanating from Grant's person." *See Gerstein.*

5)  Police then conducted a search of Mr. Grant's vehicle including the closed, locked trunk of the car.  Inside the trunk, officers recovered the contraband that forms the basis for the significant charges in this case.

6)  These circumstances do not support the warrantless search of Mr. Grant's vehicle: Not the alleged traffic offenses; not the smell of *burnt* marijuana, and not Mr. Grant's admission that he had recently smoked marijuana.  Thus, whether or not the area was in fact "an open-air drug market" may be important to the Court's resolution of any motion to suppress the evidence in this case.

7)  Therefore, on November 6, 2025, a subpoena duces tecum was served on MPD requesting any and all records documenting arrests for drug possession and/or distribution between August 1, 2024 – August 31, 2025, in the 2600 block of Georgia Ave NW; the 2600 block of Sherman Ave NW, and the 2900 block of Sherman Ave NW.

8) On December 3, 2025, the government filed a motion to quash Mr. Grant's subpoena *duces tecum* to MPD.

9) The Court should deny the government's motion as untimely; because it lacks standing to make the motion, and because the motion is meritless and frivolous.

## ARGUMENT

I.    **The United States Attorney Has No Standing to Move to Quash the Subpoena**

In litigation involving the propriety of a subpoena served upon the MPD, the Police Department can only be represented by its attorney, either the Office of the General Counsel of the MPD, or the District of Columbia's Corporation Counsel.

> The Corporation Counsel shall be under the direction of the Mayor, and have charging conduct of all law business of the said district, and all suits instituted by and against this Government thereof.

D.C. Code § 1-361 (1987 Repl. Vol.). In contrast to this general grant of authority, the role of the United States Attorney is limited to the prosecution of certain criminal matters "in the name of the United States." D.C. Code §23-101 (1989 Repl. Vol.).

In its capacity as prosecutor of crimes in the name of the United States, the Office of the United States Attorney does not represent agencies of the District. The Chief of Police is simply a witness being subpoenaed to court in his capacity as the head of an agency. Surely, if the defense were to subpoena witnesses from other District Executive Branch agencies, the Office of the United States Attorney would not claim to be the attorney for each of those witnesses as well. Thus, the role of representing the MPD is not properly vested in the Office of the United States Attorney.

The United States Attorney's Office is simply attempting to deny defense counsel access to information that is necessary for the defense of her client. It is well-established that witnesses are not the property of either party in a criminal case. *E.g., United States v. Walton,*

3

602 F.2d 1176, 1179-80 (4th Cir. 1979) ("a witness is not the exclusive property of either the government or a defendant; a defendant is entitled to have access to any prospective witness, although in the end that witness may refuse to be interviewed"). This Court should not allow the government to invoke the Court's powers to preclude defense access to this M.P.D. witness and/or the witness' documents.

Furthermore, for the United States Attorney's Office to seek to represent the public and an individual witness creates a conflict of interest. *Cf. Young v. United States, ex. rel. Vuitton et Fils, S.A.*, 481 U.S. 787 (1987) (improper for court to appoint as prosecutor in a criminal contempt case counsel for private party that is beneficiary of court order at issue in prosecution). An attorney should refuse to accept or continue employment if the interest of one client will be or is likely to be impaired by representation of another client. Code of Professional Responsibility, DR 5-105. Assistant United States Attorneys are not exempted from this rule. *Young, supra*, 481 U.S. at 803-04 & n.14. Indeed, the unique role of the prosecutor increases the necessity of conflict-free representation.

> The concern that representation of other clients may compromise the prosecutor's pursuit of the Government's interests [in seeing that justice shall be done] rests on the recognition that a prosecutor would owe an ethical duty to those other clients.

*Young, supra*, 481 U.S. at 804.

The mere fact that the United States Attorney's Office does not wish a witness to appear or to provide information for the defense does not give the government license to file a motion to quash a subpoena for the attendance of a witness or the production of evidence when that witness is not an employee of the United States Attorney's Office or other federal agencies. In sum, the United States Attorney's Office has no standing to bring its motion, and the motion should be summarily denied. Accordingly, the government's motion to quash must be denied for lack of standing.

4

## II.     The Government's Motion Has No Merit

In addition to lack of standing, the government's motion suffers from a lack of merit. The government cites *United States v. Nixon*, 418 U.S. 683 (1974) for the four-pronged test used to determine whether a subpoena complies with Rule 17(c). The subpoena at issue here complies fully with Rule 17(c).

The first prong of the test is whether the records requested by subpoena are evidentiary and relevant. The Government concedes relevance here but complains that it is not necessary to review the number of drug arrests in the year preceding the warrantless search of Mr. Grant's car, in order to explore law enforcement's broad claim about common knowledge of the area's reputation. *See* Gov. Mot. at 4 & n.2.

Particularly because the police made no effort to qualify their sweeping generalization about the area "known as an open-air drug market, where numerous individuals are known to sell and use illegal narcotics," a year's worth of drug arrest records are relevant. The request for a single year's records is possibly too circumscribed to adequately explore such a sweeping generalization. Moreover, anything less than a years' worth of records would fail to account for fluctuation in arrest rates that might take place as a result of seasonal or other environmental factors such as the months during which nearby schools are in session.

Such records, exclusively within the custody and control of MPD, are not "otherwise procurable reasonably in advance of trial by exercise of due diligence." Thus, Mr. Grant's subpoena *duces tecum* meets the second prong of the *Nixon* test.

Mr. Grant cannot properly prepare for a hearing on a motion to suppress -- nor advise Mr. Grant on whether or not to litigate such a motion -- without production and inspection of the records in advance of trial because review of those records are essential in order to evaluate Mr.

Grant's fourth amendment challenge. Thus, the third prong of the *Nixon* test is met.

Finally, in satisfaction of the fourth prong of the *Nixon* test, Mr. Grant requests these records in good faith and not as part of a fishing expedition. Counsel has a good faith basis to believe that the records will refute the officers' claim that where officers observed Mr. Grant turn left from Georgia Avenue onto Fairmont Street, NW, away from the entrance to Howard University, does not constitute "an open air drug market."

Because undersigned counsel has a solid basis to believe that the records requested by the subpoena at issue will yield relevant information and evidence for Mr. Grant's evaluation of his suppression issue, are not obtainable from any other source, and are necessary to assure that Mr. Grant receives effective assistance of counsel, there can be no question that counsel seeks these records in good faith.

WHEREFORE, for the foregoing reasons and any other reasons which may appear at a hearing on this Motion, Anthony Grant respectfully requests that this Court deny the government's untimely, without standing, and meritless motion to quash.

Respectfully submitted,

_____/s/_____
(Monica) Nikki Lotze Mosley
LOTZE MOSLEY, LLP
On Behalf of Anthony Grant
400 7th Street, NW
Washington, D.C. 20004
(202) 393-0535
NLotze@LotzeMosley.com